IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICKIE L. PRICE,<br>    Plaintiff, | )<br>)<br>) |
| v. | ) C.A. 03-455<br>) |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>    Defendant. | )<br>)<br>)<br>) |

REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the defendant's motion for summary judgment (Docket No. 8) be granted; that the plaintiff's motion for summary judgment (Docket No. 6) be denied; that the decision of the Commissioner be affirmed and that judgment be entered accordingly.

II. Report

Presently before the Court for disposition are cross motions for summary judgment.

On April 2, 2003, Vickie L. Price, by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf.

The instant application for Supplemental Security Income Benefits was filed on October 30, 2000 (R.64-70). On July 17, 2001, benefits were denied (R.52-55). On August 6,

2001, the plaintiff requested a hearing (R.56) and pursuant to that request a hearing was held on May 1, 2002 (R.23-49).  In a decision filed on May 30, 2002, an Administrative Law Judge denied benefits (R.9-17), and on July 19, 2002, the plaintiff requested reconsideration of that determination (R.7-8).  On February 14, 2003, the Appeals Council affirmed the prior determination (R.4-5).  The instant complaint was filed on April 2, 2003.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act.  Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or
> reversing the decision of the Commissioner of Social Security,
> with or without remanding the cause for a rehearing.  The findings
> of the Commissioner of Social Security as to any fact, if supported
> by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)."  Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F. 3d 752 (3d Cir. 1994).  To be eligible for such benefits,

an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

In addition, a person will be considered disabled if he/she is

(a) ... permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) ... received aid under the State plan ... for the month of December 1973 and for at least one month prior to July 1973; and (c) ... continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:

impairment [which] result[s] from anatomical, physiological, or psychological abnormalities which [are demonstrated] by medically acceptable clinical and laboratory diagnostic techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearing held on May 1, 2002, the plaintiff appeared with counsel (R.25) and testified that she was born on April 20, 1969 (R.25); that she graduated from high school (R.26) and that she worked as a fast food processor and in a nursing home (R.26).

The plaintiff also testified that she suffers from depression, anxiety, asthma, is hypoglycemic and experiences muscle weakness and aches (R.27. 29, 36-38, 40, 42); that she

experiences anxiety attacks and becomes irritable (R.28, 32, 33); that she lacks energy (R.29, 31) and that she performs some limited household chores (R.30).

At the hearing a vocational expert was called upon to testify (R.45-47). He described the plaintiff's past work experience as unskilled sedentary to heavy work (R.45). The witness was asked to assume a 33 year old individual with a high school education who was hypoglycemic and as a result passed out, and the witness testified that such an individual could not be employed (R.45-46). However, depending on the severity of the plaintiff's ailments, he also testified that there could be a wide range of jobs which she could perform (R.46-47).

In addition, certain other evidence was considered.

The plaintiff was hospitalized at Jameson Memorial Hospital from June 25, 2000 through June 26, 2000 for a right lower quadrant abdominal pain and possible ruptured ovarian cyst. She was discharged and sent home (R.115-142).

The plaintiff was treated by Dr. Howard T. Phillips on July 25, 2000 for right knee pain. Physical therapy was recommended (R.143-144).

The plaintiff had a physical therapy evaluation on July 27, 2000 at which time right knee chondromalacia was diagnosed and a knee strengthening program was recommended (R.145-147).

The plaintiff was treated at the Jameson Memorial Hospital on October 20, 2000 for left wrist pain. An ace bandage was applied (R.148-155).

The plaintiff was treated at the Primary Health Network between October 7, 1999 and October 27, 2000 for depression, left wrist injury, headaches, post cervical cancer, irritable bowel syndrome and hypoglycemia (R.156-168).

The plaintiff was hospitalized from October 28, 2000 through October 29, 2000 for depression. Her medication was increased (R.169-186).

In a report of a psychological evaluation conducted on February 6, 2001, Martin Meyers, Ph.D. diagnosed a panic disorder without agoraphobia and a depressive disorder which was not considered significant (R.187-194).

The plaintiff was treated at the Jamison Hospital emergency room on February 23, 2001 for breathing difficulty. Medication was provided and she was discharged (R.195-205).

The plaintiff received psychiatric treatment on three occasions between November 13, 2000 and March 5, 2001 from Dr. Shoukry Matta who diagnosed moderate depression (R.206-209).

The plaintiff was treated at St. Francis Hospital on March 21, 2001 for depression and her medication was continued (R.210-215).

The plaintiff was treated at the Jamison Hospital emergency room on April 24, 2001 for syncope (R.219-228).

After reviewing the medical evidence and in a residual functional capacity assessment completed on July 2, 2001, it is noted that the plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, and stand, walk or sit for about six hours (R.247-256).

A psychological residual functional capacity assessment completed on July 2, 2001 noted an affective and anxiety related disorder which was not significant to moderately limiting (R.227-246).

Drs. Elisco and Bendoni treated the plaintiff between January 28, 2000 and February 14, 2002 for cough, sore throat and urinary tract infection (R.261-278).

The plaintiff was treated with medication at the Human Services Center between March 12, 2001 and March 1, 2002 for depression (R.283-304).

Based on the evidence presented, the Commissioner determined:

The claimant is a 33 year-old individual with a high school education. Her past work experience includes employment as a nursing assistant, telemarketer and counter person at a hot dog shop. She alleges that she became disabled on December 1, 1999 due to a mood disorder and hypoglycemia.

\* \* \*

Based on the medical evidence, the undersigned finds that the claimant has a mood disorder and hypoglycemia that qualify as impairments that are severe within the meaning of the Regulations. The claimant's impairments are not severe enough, however, to meet or medically equal one of the impairments listed ... Although the claimant has shown some symptoms of an affective disorder that correspond with the Part A criteria of Section 12.04 ... the claimant does not demonstrate the degree of limitation of function required under the Part B criteria.  The claimant is a sole parent for three young children. She performs the daily activities of cooking, cleaning and laundering for herself and her family. She does the shopping, minor household repairs, and gardening with help from her boyfriend.  She drives for very short trips. Socially, the claimant stated that she likes to go for coffee with relatives and friends, or to sit and play cards/games. She belongs to one social club.

\* \* \*

From the description of the activities in which the claimant regular[ly] engages, she certainly performs within the parameters of the established residual functional capacity.

\* \* \*

> Based on the testimony of the vocational expert, the undersigned has concluded that considering the claimant's age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore reached ... (R.12-16).

Based on the evidence presented, it would appear that while the plaintiff does suffer from some degree of physical and mental limitations, she is able to engage in a wide variety of activities of daily living and with some minimal accommodation she could also engage in a wide range of substantial gainful employment. For this reason, the conclusion of the Commissioner is supported by substantial evidence.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. <u>Biener v. Calio</u>, 361 F.3d 206 (3d Cir.2004). In the instant case there are no material issues of fact in dispute, and the findings of the Commissioner are supported by substantial evidence. For this reason, it is recommended that the defendant's motion for summary judgment be granted; that the plaintiff's motion for summary judgment be denied; that the decision of the Commissioner be affirmed and that judgment be entered accordingly.

Within ten days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                                Respectfully submitted,

                                                s/Robert C. Mitchell

Dated: July 8, 2005                          United States Magistrate Judge